# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

REGINALD DUNAHUE,                                                    PLAINTIFF
ADC #106911

v.                                          2:18CV00021-JM-JTK

WENDY KELLY, et al.                                                 DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation.   Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## I.      Introduction

Plaintiff Reginald Dunahue is a state inmate incarcerated at the East Arkansas Regional Unit (EARU) of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, seeking damages from Defendants for allegedly failing to protect him from an attack by another inmate (Doc. No. 2). Defendants Kelly, Reed, and Andrews were dismissed on March 1, 2018 (Doc. No. 10).

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by remaining Defendants Baxter, Crawford, Dycus,

Knott, and Lane (Doc. Nos. 116-118). Plaintiff filed a Response (Doc. No. 119), Defendants filed a Reply (Doc. No. 122), and Plaintiff filed a Supplemental Response (Doc. No. 125).

## II.    Amended Complaints

On September 19, 2017, Plaintiff was stabbed by another inmate, Antonio Smith, while being led from the recreation yard back to his cell. (Doc. No. 93, p. 1) In an Amendment adding Defendant Baxter, Plaintiff claimed she violated her duty to protect him from the inmate assault when she did not adequately search Smith prior to placing him in a cut-open cage in the recreation yard. (Id., pp. 2-3) In his first Amended Complaint, he stated Defendant Crawford also failed to protect him when he placed Smith into the cage with a hole in it. (Doc. No. 18, p. 11) Defendant Knott knew or should have known that Smith had access to a knife, based on Plaintiff's prior complaints about inmates with weapons and contraband. (Id.) Defendant Lane also failed to adequately search Smith prior to placing him in the recreation cell and failed to prevent Smith's foreseeable escape and stabbing of the Plaintiff. (Id., p. 25) Dycus knew of the holes in the recreation yard cages and failed to adequately remedy those issues and the problems with inmates in possession of weapons. (Id.)

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).

"The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.  Official Capacity Liability

The Court initially agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed, pursuant to sovereign immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

### B.  Individual Capacity Liability

Defendants also ask the Court to dismiss the individual capacity claims against them pursuant to qualified immunity, which protects officials who act in an objectively reasonable manner.   It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity is a question of law, not a question of fact. <u>McClendon v. Story County Sheriff's Office</u>, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. <u>See</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. <u>Nelson v. Correctional Medical Services</u>, 583 F.3d 522, 528 (8th Cir. 2009).

According to Defendant Crawford's Declaration, he was called to the recreation yard on September 19, 2017 because inmate Antonio Smith refused to leave the yard. (Doc. No. 116-1, p. 1) When he arrived, he noticed a piece of metal fencing was missing from Smith's cell and instructed Smith to back away from the opening. (<u>Id</u>., p. 2) Smith refused

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Nelson</u>, 583 F.3d at 528 (quoting <u>Pearson v. Callahan</u>, 555 U.S. at 236).

the order, pulled out a homemade shank, stuck his arm through the opening in the fence, and stabbed Plaintiff, who was passing by the cell on the way back to his own cell. (Id.) Crawford and the officers who were in charge of Plaintiff attempted to move Plaintiff out of the way, but Smith escaped through the hole in the cell and continued to attack Plaintiff. (Id.) Crawford and another officer then subdued Smith by spraying him with chemical agents. (Id.) The incident occurred in less than a minute and a half, and Plaintiff was taken to the infirmary and then to a local hospital for medical treatment. (Id., pp. 2-3) Crawford stated he had no reason to believe Smith was a threat to the Plaintiff, and that Defendants Lane, Knott, Dycus, and Baxter were not present on the yard during the incident. (Id., p. 3)

Baxter stated that on the date of the attack, she and a male officer (non-party) went to Inmate Smith's cell to search him prior to escorting him to the recreation yard. (Doc. No. 116-3, p. 1) Because she is female, she is not permitted to strip search a male inmate if a male guard is available to do so. (Id.) Therefore, she stood outside Smith's cell while the other officer searched him, and then both escorted Smith to the yard. (Id.) Baxter did not place Smith in the damaged cell, was not present in the yard when the attack occurred and had no reason to believe that Smith was a danger to Plaintiff. (Id., pp. 1-2)

Defendant Dycus is Deputy Warden over Security at EARU and was not present on the yard when the attack occurred. (Doc. No. 116-4) He reviewed a report prepared after the incident and concluded there was no evidence that staff had reason to believe that Smith was a danger to Plaintiff. (Id.) ADC policy provides that inmate strip searches be conducted by a guard of the same gender as the inmate, if possible, and no record existed to show that

Smith was on a "high security alert" prior to the incident. (Id., pp. 1-2) Neither Defendants Lane nor Knott, staff supervisors, were present on the yard when the attack occurred and neither found any indication that staff had reason to believe that Smith was a danger to Plaintiff. (Doc. Nos. 116-5, 116-6)

Plaintiff stated in his deposition that he did not have any problems with Smith prior to the day of the incident and did not tell anyone he was worried about Smith. (Doc. No. 116-2, p. 5) Smith was not on Plaintiff's enemy alert list and Plaintiff never filed a grievance complaining about him. (Id., p. 6) Plaintiff claimed that an officer warned him that if he did not stop writing grievances about Officer Palmer (a non-party), something would happen to him. (Id.) He also stated he filed grievances prior to the incident about officers who allowed inmates to exit their cells armed with weapons and carry those weapons to the recreational yard, and that Dycus failed to take corrective measures to repair the cages or to prevent inmates from carrying weapons. (Id., p. 7) Although neither Lane nor Dycus were present on the yard at the time of the incident, Plaintiff sued them because they failed to diligently supervise their officers and ensure Plaintiff's safety. (Id., pp. 2-3) Plaintiff stated that Knott was working the day of the incident, but Plaintiff was not sure if he was on the yard at the time Plaintiff was attacked. (Id., p. 4) Baxter was in charge of searching inmates prior to placing them in the recreational area and took Plaintiff and Smith to the yard on that day (Id.)

Based on these declarations and testimonies, Defendants state that Plaintiff cannot show that they knew of a substantial risk of serious harm to him, and were deliberately

indifferent to any risk, citing Farmer v. Brennan, 511 U.S. 825, 834 (1994). Plaintiff admitted he never had interactions with Smith prior to the date of the incident and had no conversations with ADC officials about Smith posing a danger to him prior to the attack. In addition, Defendants state Plaintiff presented no facts to show that they were aware of a danger to him, especially since Defendants Dycus, Knott, Lane, and Baxter were not present during the incident. Defendants also state that Plaintiff's claims that they violated ADC policies do not state a constitutional claim for relief, and that qualified immunity applies to protect them from liability in surprise attack situations. See Tucker v. Evans, 276 F.3d 999 (8th Cir. 2002).

In his Responses, Plaintiff states that prior to the attack, Defendants knew or had reason to know of a substantial risk of harm to inmates on the recreation yard. He states Baxter admitted that she let Smith out of the cell with a knife and admitted that she failed to properly search Smith. She also should have known that an inmate would escape from a cell with holes in it and stab other inmates. Defendant Dycus tolerated officers' lapses in maintaining secure and safe living environments for inmates on the recreation yard and all Defendants were on alert that the recreation cells were cut open and inmates were escaping from them and stabbing other inmates.

In their Reply, Defendants state that Plaintiff's statements are not supported by any facts, and that he made conclusory and inflammatory claims which are misrepresentations of fact and law. In addition, Plaintiff does not present any evidence to support his claim that the attack was set up by a non-party officer in retaliation for grievances he filed.

8

To support a claim of failure to protect, Plaintiff must allege and prove that Defendants were deliberately indifferent to the need to protect him from a substantial risk of serious harm. Newman v. Holmes, 122 F.3d 650, 652 (8th Cir. 1997). This claim has two components, an objective one asking whether there was a substantial risk of harm to the inmate, and a subjective one asking whether the prison official was deliberately indifferent to that risk. Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). See also Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000). In addition, prison officials are entitled to qualified immunity when a failure-to-protect claim arises from injuries resulting from a surprise attack by another inmate. Tucker v. Evans, 276 F.3d at 1001.

In this particular case, there is no dispute that the attack on Plaintiff was a surprise, as he admitted that he had no conversations with Smith and no indication that Smith posed a danger to him. In addition, although he claims Baxter admitted that she allowed Smith on the yard with a knife, this claim is based on Baxter's statement that she did not strip search Smith because she is female, and a male officer was with her to take that responsibility. Plaintiff's conclusion, based on that statement, is completely unfounded and inflammatory, especially because he presents no evidence to show that any of the Defendants had prior knowledge of a risk of harm to him. Although he claims Defendants knew of prior attacks on the yard, he provides no evidence to show those attacks actually occurred or that any of the Defendants had knowledge and/or involvement with them. As noted above, Plaintiff cannot not rest on mere allegations, but "must set forth specific facts showing that there is a genuine issue for trial." Webb, 144 F.3d at 1135. Plaintiff

9

provides no evidence that he was confined under conditions posing a substantial risk of harm, especially since he himself was unaware that inmate Smith posed a threat of harm, and the evidence shows Crawford quickly responded to the incident as soon as Smith began his attack. Finally, any allegations that Defendants violated ADC policy fail to support a constitutional claim for relief. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1992).

The Court also finds that Plaintiff's allegations against Defendants Dycus, Knott, and Lane are based on their supervisory positions as Deputy Warden and security officers. Absent a showing that they were personally involved in or aware of a risk of harm, or tacitly authorized improper actions by Defendants Crawford and Baxter, they cannot be held liable. "In a § 1983 case, an official 'is only liable for his ... own misconduct' and is not 'accountable for the misdeed of [his] agents' under a theory such as respondeat superior or supervisor liability." Whitson v. Stone County Jail, 602 F.3d 920, 923 (8th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

Therefore, absent additional facts or evidence from Plaintiff to show otherwise, the Court finds that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

IV.    **Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary

10

Judgment (Doc. No. 116) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 21st day of February, 2019.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE